THIS OPINION IS A
PRECEDENT OF THE
T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

MBA

Mailed: April 6, 2009

Cancellation No. 92047741

Bayer Consumer Care AG

v.

Belmora LLC

**Before Seeherman, Rogers and Taylor, Administrative Trademark Judges**

**By the Board:**

This case now comes up for consideration of respondent's fully briefed motion, filed October 8, 2008, to dismiss the second amended petition for cancellation for failure to state a claim upon which relief may be granted. This is the third time respondent has moved to dismiss a petition for cancellation in this proceeding. Respondent's first motion to dismiss the original petition became moot after petitioner filed an amended petition (the first amended petition) for cancellation as a matter of right. The Board granted respondent's second motion to dismiss in its order of July 29, 2008 (the "Prior Order"), but allowed petitioner time to file the second amended petition, which petitioner did on August 28, 2008. Respondent's third, now pending motion to dismiss is directed to that petition.

Background

Respondent owns a registration of the mark FLANAX for "Orally ingestible tablets of Naproxen Sodium for use as an analgesic" (the "Registration").[1]  In its original petition for cancellation, petitioner alleged prior use of an identical mark "in connection with the advertising and sale of orally ingestible tablets of naproxen sodium for use as an analgesic," and likelihood of confusion.  Respondent's first motion to dismiss was based on petitioner's failure to allege prior use of its alleged mark in the United States.

In its first amended petition for cancellation, petitioner again alleged prior use of FLANAX and likelihood of confusion, but this time also specifically alleged that the mark "has long been, and is being, used in the United States, and, on information and belief, since long prior to the filing date of the application that matured into [the Registration], consumers have purchased products bearing Petitioner's FLANAX mark in the United States."[2]  The Board found these allegations insufficient.

> Petitioner has failed to sufficiently
> plead that it made use of the FLANAX
> mark in the United States prior to the

---

[1]    Registration No. 2924440, issued February 1, 2005 from an application filed October 6, 2003 under Section 1(b) (intent to use), later amended to assert a date of first use in commerce of March 1, 2004.

[2]    Petitioner further alleged that respondent's use and registration of FLANAX violates the Pan-American Convention of 1929 and the Santiago Convention of 1923, but the Board dismissed these claims in the Prior Order.

> filing date of respondent's underlying application.… While petitioner quite specifically states in paragraph 1 that it uses FLANAX in connection with particular goods, it does not state that such use was in the United States. Then, when petitioner discusses use in the United States in paragraph 2, petitioner conspicuously has omitted from its pleading any allegation that products bearing petitioner's FLANAX mark that may have been purchased in the United States prior to the filing date of respondent's underlying application were those manufactured and distributed by petitioner or even distributed by or on behalf of petitioner in the United States.

Prior Order at pp. 4-5.

The Second Amended Petition for Cancellation

In its second amended petition, petitioner again alleges prior use of FLANAX, and specifically that "Petitioner's FLANAX mark has long been and is being used in the United States on products authorized by Petitioner, and, on information and belief, since long prior to the filing date of the application that matured into [the Registration], consumers have purchased in the United States goods authorized by Petitioner and bearing Petitioner's FLANAX mark." Second Amended Petition ¶ 2 (emphasis supplied). Petitioner further alleges "on information and belief" that prior to the filing date of respondent's application "parties have purchased goods bearing Petitioner's FLANAX mark and imported them into the United States where they have been resold to consumers in the

3

United States," and "consumers traveling abroad to Mexico and other Latin American countries, and immigrants from those countries, have purchased goods bearing Petitioner's FLANAX mark and have brought those goods into the United States for use and resale here." Id. ¶¶ 2-3.

Petitioner has also alleged that respondent "copied Petitioner's packaging for its FLANAX product," including by using an identical color and font, and respondent "uses the FLANAX mark to misrepresent to consumers, including especially consumers familiar with Petitioner's FLANAX mark, that [respondent's] product is from the same source as Petitioner's goods sold under the FLANAX mark." Id. ¶¶ 5-6. Petitioner alleges that its mark "became well-known in the United States long prior to the filing date" of respondent's application, and that respondent "had knowledge of Petitioner's aforesaid use of the FLANAX mark for analgesics … in the United States and [other] countries, prior to the filing date" of respondent's application. Id. ¶¶ 9, 11.

Based on its factual allegations, petitioner makes four claims in the second amended petition: (1) respondent's use of FLANAX "is likely to result in confusion with Petitioner's FLANAX trademark, or in the mistaken belief that Registrant or its FLANAX product is in some way legitimately connected with, licensed or approved by Petitioner;" (2) respondent's use and registration of FLANAX

"violate Article 6*bis* of the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as revised at Stockholm, July 14, 1967, 21 U.S.T. 1583 (the 'Paris Convention'), as made applicable by Sections 44(b) and (h) of the Lanham Act …;" (3) respondent's use and registration of FLANAX "violate Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because its FLANAX registration is now being used by, or with the permission of, Registrant to misrepresent the source of the goods on or in connection with which Registrant's FLANAX mark is being used;" and (4) respondent "obtained its registration for FLANAX fraudulently … because, on information and belief, at the time [respondent] applied to register the FLANAX mark, [respondent] falsely declared that to the best of its knowledge and belief no other person, firm, corporation or association had the right to use the mark in commerce …." Id. ¶¶ 9, 12-15.

Respondent's Motion to Dismiss and Petitioner's Response

In its motion to dismiss, respondent argues that petitioner's current claim of priority is deficient for the same reason that the claim was found deficient when raised in the first amended petition for cancellation – petitioner again failed to plead that "the alleged transportation of goods bearing its FLANAX mark into the United States (and resale thereafter) has been made on its behalf or under its

sponsorship …."[3]   Respondent argues that the Paris Convention claim is insufficient because "the Lanham Act does not legislate a well-known marks exception to the longstanding territoriality principles of U.S. trademark law," through Sections 44(b) or (h) or otherwise. Respondent argues that the misrepresentation of source claim is deficient because it cannot be based "on alleged prior extra-territorial use of the FLANAX [mark]," and because petitioner merely "parrots" Section 14(3) rather than specifically alleging facts reflecting "blatant misuse" or "deliberate passing off" of respondent's goods. Furthermore, respondent alleges that this claim is "nothing more than [petitioner's] failed § 2(d) claim, and failed Paris Convention Article 6*bis* claim."  Finally, respondent argues that petitioner has not sufficiently pled fraud because petitioner does not have and has not adequately pled prior, superior U.S. rights in FLANAX.

In its response to the motion to dismiss, petitioner alleges that "a cancellation petitioner does not need to demonstrate 'use in commerce,' but need only show 'use' of its mark," and that its allegations in the second amended

---

[3]    Respondent claims that the second amended petition "does not appear to seek to resurrect a claim based on Section 2(d)," but then apparently seeks to dismiss any such claim by arguing that petitioner has not adequately alleged priority.  In any event, it is clear from that petition and petitioner's response to the motion to dismiss that petitioner does still seek to cancel the involved registration under Section 2(d).

petition meet this standard and sufficiently plead priority and likelihood of confusion under Section 2(d). Petitioner argues that its Paris Convention claim is sufficient because "[t]he United States Congress implemented" Article 6*bis* "when it enacted Sections 44(b) and (h) of the Lanham Act, which provides [petitioner] with an independent ground to cancel [respondent's] registration." Petitioner argues that its misrepresentation of source claim is sufficiently pled and "does not require [petitioner] to have prior use of its mark in the United States." Finally, petitioner argues that its fraud claim is sufficient because petitioner alleges prior use in the United States of FLANAX, that it has "legal rights superior to those of [respondent]," that respondent was aware of petitioner's allegedly superior rights and that respondent's "copying of [petitioner's] trade dress evidences not only [its] belief that a likelihood of confusion would result but [its] intent to cause confusion …."

In its reply brief, respondent argues that the additional allegation in the second amended petition that U.S. consumers purchased goods bearing petitioner's mark in the United States which were "authorized" by petitioner is not sufficient, because petitioner's allegation of priority remains "on information and belief." Furthermore, while respondent acknowledges that petitioner need not plead "use

in commerce" in the United States in order to bring a Section 2(d) claim, respondent claims that the second amended petition "does not allege any activities – be they use in commerce or analogous use – **by or on behalf of [petitioner] within the United States** prior to [respondent's] priority date" (emphasis in original). Finally, respondent argues that petitioner does not have standing to bring a misrepresentation of source claim because it "does not plead facts sufficient to give it superior rights in the FLANAX mark in the United States *vis-à-vis* [respondent]," or "any prior use of the packaging in question, let alone … in the United States."

Analysis

As set forth in Fair Indigo LLC v. Style Conscience, 85 USPQ2d 1536, 1538 (TTAB 2007), the following is the applicable standard for evaluating a motion to dismiss:

> In order to withstand a motion to dismiss for failure to state a claim, a plaintiff need only allege such facts as would, if proved, establish that (1) the plaintiff has standing to maintain the proceedings, and (2) a valid ground exists for opposing [or cancelling] the mark. The pleading must be examined in its entirety, construing the allegations therein liberally, as required by Fed. R. Civ. P. 8(f), to determine whether it contains any allegations which, if proved, would entitle plaintiff to the relief sought. See Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982); Kelly Services Inc. v. Greene's Temporaries

> Inc., 25 USPQ2d 1460 (TTAB 1992); and TBMP §503.02 (2d. ed. rev. 2004). For purposes of determining a motion to dismiss for failure to state a claim upon which relief can be granted, all of plaintiff's well-pleaded allegations must be accepted as true, and the complaint must be construed in the light most favorable to plaintiff. See Advanced Cardiovascular Systems Inc. v. SciMed Life Systems Inc., 988 F.2d 1157, 26 USPQ2d 1038 (Fed. Cir. 1993); see also 5A Wright & Miller, Federal Practice And Procedure: Civil 2d §1357 (1990). … The purpose of a Rule 12(b)(6) motion is to challenge "the legal theory of the complaint, not the sufficiency of any evidence that might be adduced" and "to eliminate actions that are fatally flawed in their legal premises and destined to fail …." Advanced Cardiovascular Systems Inc. v. SciMed Life Systems Inc., supra at 26 USPQ2d 1041.

See also, Young v. AGB Corp., 152 F.3d 1377, 1379, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998).

Turning first to petitioner's claim under Section 2(d), we find that it remains insufficient. In the Prior Order, the Board found that petitioner's Section 2(d) claim in the first amended petition for cancellation was deficient because there was no allegation that products bearing petitioner's mark which were purchased in the United States prior to respondent's filing date were "manufactured and distributed by petitioner or even distributed by or on behalf of petitioner in the United States." Despite this clear and specific holding, the second amended petition

again fails to plead that the goods bearing petitioner's mark which were allegedly purchased in the United States prior to respondent's filing date were manufactured or distributed in the United States by petitioner, or on its behalf. Instead, the petition merely alleges that the goods were "authorized by" petitioner. This allegation effectively ignores the Board's invitation for petitioner to explain its relationship, if any, to the alleged purchases. A third party's importation and resale of goods does not by itself constitute "use" by petitioner, at least not without some allegation that the third party was licensed or authorized by petitioner to "use" petitioner's alleged mark on petitioner's behalf. Cf., First Niagara Insurance Brokers Inc. v. First Niagara Financial Group Inc., 476 F.3d 867, 81 USPQ2d 1375 (Fed. Cir. 2007) (finding use rather than "use in commerce" sufficient to bring opposition under Section 2(d), but the use was by opposer, not merely "authorized" by opposer). Accordingly, respondent's motion is hereby **GRANTED** with respect to petitioner's current claim of priority and likelihood of confusion. Because respondent's argument that this claim should be dismissed "once and for all" is well-taken, petitioner's Section 2(d) claim in the second amended petition is hereby **DISMISSED WITH PREJUDICE**.

Turning next to petitioner's claim under Article 6*bis* of the Paris Convention, "the Paris Convention is not self-executing.  As such, Articles 6*bis* and 6*ter* do not afford an independent cause of action for parties in Board proceedings."  International Finance Corp. v. Bravo Co., 64 USPQ2d 1597, 1603 (TTAB 2002); see also, In re Rath, 402 F.3d 1207, 74 USPQ2d 1174, 1175 (Fed. Cir. 2005) ("the Paris Convention is not a self-executing treaty and requires congressional implementation"), and Person's Co. Ltd. v. Christman, 900 F.2d 1565, 14 USPQ2d 1477, 1481 (Fed. Cir. 1990); compare, British-American Tobacco Co. v. Philip Morris, Inc., 55 USPQ2d 1585 (TTAB 2000) (denying motion to dismiss claim under Pan American Convention in part because Convention is self-executing).

Furthermore, while Section 44 was "generally intended" to implement elements of the Paris Convention, In re Rath, 402 F.3d at 1207, 74 USPQ2d at 1177, it does not, through subsections 44(b) or (h) or otherwise, provide the user of an assertedly famous foreign trademark with an independent basis for cancellation in a Board proceeding, absent use of the mark in the United States.  See, ITC Ltd. V. Punchgini Inc., 482 F.3d 135, 82 USPQ2d 1414, 1433 (2d Cir. 2007), cert. denied, 128 S.Ct. 288 (2007) ("Congress's specificity in dealing with registered marks cautions against reading a famous marks exception into sections 44(b) and (h), which

nowhere reference the doctrine, much less the circumstances under which it would appropriately apply despite the fact that the foreign mark was not used in this country.").

We acknowledge that the Second Circuit in Punchgini discussed the possible recognition by this Board and by the U.S. Court of Appeals for the Ninth Circuit of a famous mark exception to the territoriality principle, the latter Court apparently recognizing the doctrine "as a matter of sound policy," in Grupo Gigante S.A. de C.V. v. Dallo & Co., 391 F.3d 1088, 73 USPQ2d 1258 (9th Cir. 2004). Punchgini, 82 USPQ2d at 1430. However, the Second Circuit also noted that neither the referenced Board cases, one of which addressed the possible exception only in dictum, nor the Grupo Gigante decision found the exception to arise in the context of an Article 6bis claim. Id. at 1429-30. And petitioner's claim is, as noted, based on Article 6bis of the Paris Convention.[4] For all of these reasons, respondent's motion

---

[4]     In any event, respondent amply demonstrates that a famous mark exception, whatever its possible basis in law, is a minority view, and that most courts which have considered the issue find that there is no cause of action under such an exception where, as here, the plaintiff relies on foreign use alone. Respondent's Motion to Dismiss at pp. 5-10. More importantly, in Grupo Gigante, the Ninth Circuit found that "the Paris Convention creates neither a federal cause of action nor additional substantive rights" beyond those in the Lanham Act. Id., 73 USPQ2d at 1266. And Board decisions discussing the possibility of a famous foreign mark exception in the common law do not hold to the contrary. See, First Niagara Insurance Brokers Inc. v. First Niagara Financial Group Inc., 77 USPQ2d 1334 (TTAB 2005), rev'd on other grounds, 476 F.3d 867, 81 USPQ2d 1375 (Fed. Cir. 2007), The All England Lawn Tennis Club (Wimbledon) Limited v. Creations Aromatiques, Inc., 220 USPQ 1069 (TTAB 1983) and

is **GRANTED** with respect to petitioner's claim under Article 6*bis* of the Paris Convention, and the claim is hereby **DISMISSED, WITH PREJUDICE.**

Turning next to petitioner's misrepresentation of source claim, "[a] pleading of misrepresentation of source 'must be supported by allegations of blatant misuse of the mark by respondent in a manner calculated to trade on the goodwill and reputation of petitioner.'"  Otto International Inc. v. Otto Kern GmbH, 83 USPQ2d 1861, 1863 (TTAB 2007) (quoting McDonnell Douglas Corporation v. National Data Corporation, 228 USPQ 45, 47 (TTAB 1985)).  Petitioner must "do more than make a bald allegation in the language of the statute," and the claim must go beyond the allegations "that typically support a claim of likelihood of confusion under Section 2(d)."  Id. at 1864 ("If it were otherwise, Congress' exclusion of claims under Trademark Act Section 2(d) after five years would be rendered meaningless.").

Here, petitioner has alleged clearly and specifically that respondent copied petitioner's mark, including its particular display, and virtually all elements of its packaging, in order to "misrepresent to consumers, including especially consumers familiar with Petitioner's FLANAX mark," that respondent's product is from the same source as petitioner's product.  This alleged copying goes well beyond

Mother's Restaurants Incorporated v. Mother's Other Kitchen,

13

"merely" reproducing petitioner's alleged mark, and extends to using "an identical blue color," "an identical font," and making the "'FLA' portion of the mark bolder than the 'NAX' portion." Second Amended Petition ¶ 5. Indeed, respondent's contention that the misrepresentation of source claim is "nothing more than [the] failed § 2(d) claim, and failed Paris Convention Article 6*bis* claim" is belied by petitioner's photographic comparison of the parties' respective packaging. Further, while respondent is correct in its suggestion that the Board has in the past rejected Section 2(d) claims masquerading as misrepresentation of source claims, those cases typically involve attempts to avoid the bar against pleading a Section 2(d) claim more than five years after registration. Otto International, 83 USPQ2d at 1864; McDonnell Douglas, 228 USPQ at 47. This is not what petitioner is attempting here, as the five-year bar against a Section 2(d) claim has not yet arisen in regard to respondent's registration.

Because petitioner specifically alleges that respondent deliberately uses packaging which "colorably imitates and appropriates" petitioner's, and construing petitioner's allegations in the light most favorable to petitioner, we find that petitioner has sufficiently pled misrepresentation of source under Section 14(3). Compare The E.E. Dickinson

Inc., 218 USPQ 1046 (TTAB 1983).

Co. v. The T.N. Dickinson Company, 221 USPQ 713, 716 (TTAB 1984) (denying motion to dismiss misrepresentation of source claim based on analogous allegations), with Otto International, 83 USPQ2d at 1864 (granting motion to dismiss misrepresentation of source claim where "blatant misuse" and "deliberate passing-off" were not sufficiently alleged).

While respondent argues that petitioner does not have "standing" to bring a misrepresentation of source claim given its failure to allege use in the United States, petitioner has alleged that it is damaged by respondent's use of strikingly similar packaging "to misrepresent the source of" respondent's goods. This is enough to sufficiently allege petitioner's standing in this proceeding. Although existing case law does not address whether petitioner's alleged use is sufficient to support a claim of misrepresentation of source, we find that at a minimum the claim is pled sufficiently to allow petitioner to argue for the extension of existing law. Moreover, respondent's focus solely on petitioner's extra-territorial use fails to take account of the fact that respondent's use is in the United States and to the extent such use may be misrepresenting to consumers making purchases in the United States that petitioner is the source of respondent's products, the misrepresentation is alleged by petitioner to be occurring in the United States. The Lanham Act provides

Cancellation No. 92047741

for the protection of consumers as well as the property rights of mark owners. Nitro Leisure Products, L.L.C. v. Achushnet Co., 341 F.3d 1356, 67 USPQ2d 1814, 1818 (Fed. Cir. 2003); In re Spirits International N.V., 86 USPQ2d 1078, 1083 (TTAB 2008). Under the circumstances of this case, respondent's motion is **DENIED** with respect to petitioner's misrepresentation of source claim.

Finally, because we have found that petitioner has not sufficiently alleged prior use of its mark in the United States, we hereby **GRANT** respondent's motion to dismiss the second amended petition with respect to petitioner's fraud claim, which is hereby **DISMISSED WITH PREJUDICE**. Petitioner's fraud claim is based on the allegation that in its application, respondent "falsely declared that to the best of its knowledge and belief no other person, firm, corporation or association had the right to use the mark in commerce …. Such declaration was false because [respondent] knew of Petitioner's right to use its FLANAX mark in commerce." However, because petitioner has not alleged prior use of its mark in the United States, petitioner has also not sufficiently alleged that it has "legal rights superior to" respondent's, and its fraud claim is therefore untenable. Intellimedia Sports Inc. v. Intellimedia Corp., 43 USPQ2d 1203, 1206 (TTAB 1997).

Conclusion

16

Respondent's motion to dismiss is denied with respect to petitioner's misrepresentation of source claim and otherwise granted.  Within **THIRTY DAYS** of the mailing date of this order, petitioner shall file and serve a further amended petition for cancellation including only the misrepresentation of source claim.  Respondent's answer to the further amended petition shall be due within thirty days of service.  Proceedings herein are resumed, and discovery and trial dates are reset as follows:

| | |
|---|---|
| Discovery Period to Close: | October 6, 2009 |
| 30-day testimony period for party in position of plaintiff to close: | January 4, 2010 |
| 30-day testimony period for party in position of defendant to close: | March 5, 2010 |
| 15-day rebuttal testimony period to close: | April 19, 2010 |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).  An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

News from the TTAB

The USPTO published a notice of final rulemaking in the Federal Register on August 1, 2007, at 72 F.R. 42242.  By this notice, various rules governing Trademark Trial and Appeal Board inter partes proceedings are amended.  Certain

amendments have an effective date of August 31, 2007, while most have an effective date of November 1, 2007.  For further information, the parties are referred to a reprint of the final rule and a chart summarizing the affected rules, their changes, and effective dates, both viewable on the USPTO website via these web addresses:
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242.pdf
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242_FinalRuleChart.pdf

By one rule change effective August 31, 2007, the Board's standard protective order is made applicable to all TTAB inter partes cases, whether already pending or commenced on or after that date.  However, as explained in the final rule and chart, this change will not affect any case in which any protective order has already been approved or imposed by the Board.  Further, as explained in the final rule, parties are free to agree to a substitute protective order or to supplement or amend the standard order even after August 31, 2007, subject to Board approval.  The standard protective order can be viewed using the following web address:
http://www.uspto.gov/web/offices/dcom/ttab/tbmp/stndagmnt.htm

***